## Appleby Manor Road.

1. The appointment of viewers for laying out a road, receiving their report and entering confirmation *nisi*, all at the same term of court, are altogether illegal.

2. The application for damages by those through whose lands a public road is opened, cannot cure irregularities in laying it out, the matter being one in which the whole community are interested.

3. When illegality in the opening of a public road is brought to the notice of the Supreme Court, even by one who has no equity, they will correct the error.

4. Where a public road has been opened and laid out by a railroad company, under the Railroad Act of 1849, the reversal of proceedings in the Quarter Ses-

[Appleby Manor Road.]

sions, relative to the road, taken under the Act of 1836, will not necessarily disturb it.

CERTIORARI to the Court of Quarter Sessions of *Armstrong county.*

The Allegheny Valley Railroad Company, by their solicitors, petitioned the Quarter Sessions on the 19th of September, 1853, for the appointment of viewers to view, vacate, and supply so much of the public road leading from Kittanning to the Kiskiminetas river as lies between Kittanning and Appleby Manor. Same day viewers were appointed and ordered to report to the present sessions. Four days afterwards, viz., September 23d, they reported to the current term of the court then in session, and next day report was confirmed *nisi.* By these proceedings, that part of the old road aforesaid, or so much thereof as was rendered useless by the Allegheny Valley Railroad, was vacated, and a new road ordered to be opened—part of it through improved lands of Benjamin Fry. This road was made at once by the railroad company, at their own expense. Fry complained of damage, and, on the 6th of June, 1855, petitioned the court for appointment of viewers to assess his damages. Viewers were appointed, who reported in his favor the sum of $500, which assessment is still undisposed of, exceptions being filed thereto. Fry proceeded to close up the road; but was indicted for erecting a nuisance, and compelled to open it. He then sued out this *certiorari.*

*Boggs,* for plaintiff in error.

1. The court erred in ordering the viewers to report their proceedings to the sessions then holding. The court had no right to appoint a view to report at the same sessions, nor to receive such report and act on it within four days from the presentation of the original petition. This being unauthorized by law, and affording no time to those interested to make objection thereto, the order should have been made returnable to the next session of the court thereafter. Cites Act of 13th June, 1836, sections 1, 3, 18.

2. The court erred in confirming the report at the present term. Section 3, act aforesaid, and *Case of the Bridge over Smithfield Creek,* 6 Wharton's Rep. 363. Fry, by the proceedings, was entirely deprived of the right of review—a right guaranteed in all such proceedings. Act of June 13, 1836, sec. 79; 5 W. & S. 203; 2 Casey, 472; 1 Barr, 144.

*Golden* and *Fulton,* for defendant in error, argued that, under the circumstances, this court should hold the confirmation *nisi* as absolute after the lapse of so long a time, and the expendi-

[Fry *v.* Coleman.]

ture of so much money. Or, at least, this court should exercise their undoubted power, and do that which the Quarter Sessions should have done, and confirm this road *nunc pro tunc*. It is, however, a conclusive answer to Fry's complaint, that this case does not arise under the general road law, and is not governed by it, but by the Act of 19th of February, 1849, the 13th section of which reads as follows : "If any such railroad company shall find it necessary to change the site of any turnpike or public road, they shall cause the same to be reconstructed forthwith at their own proper expense, on the most favorable location, and in as perfect a manner as the original road." Under this law the railroad company had the right to change the site of this road *forthwith*, and without the aid of the court; but, to give the citizens a voice in the location of the new road, the proceedings complained of in this case were adopted.

The opinion of the court was delivered November 9, 1857, by
LEWIS, C. J.—The proceedings of the court in appointing the viewers, receiving their report, and entering a confirmation *nisi*, at the same term that the petition was presented, are altogether illegal. The confirmation *nisi* was entered the next day after the report, and within five days after the first application for the road. They gave no opportunity for a hearing before the viewers, such as the law contemplates.

As the laying out of a public road is a matter in which the whole community are interested, the application of Benjamin Fry cannot cure the great irregularity in laying it out. He may have no equity, but he has brought the illegality to our notice, and we see that it affects the public rights, and makes the county liable for damages for a road which, for aught that appears, may not be necessary for any public purpose apart from the interest of the railroad company. It is, therefore, our duty to take notice of and correct the error.

If the railroad company have laid out and opened the road, under the Railroad Act of 1849, the reversal of these proceedings will not necessarily disturb it. Its legality will depend, in that case, upon the Act of 1849, and the action of the railroad company under that action.

Proceedings reversed.